IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONAE ANDERSON,                    *

      Plaintiff,                        *

v.                                 *          Civil Action No. GLR-22-1117

T.W. BROWN, et. al.,               *

      Defendants.                       *
                        ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendants Officer Tiffany Brown and Sergeant Henry Oduro-Kwarteng[1] (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant Defendants' Motion, construed as one for summary judgment.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff Donae Anderson, currently incarcerated at the Maryland Correctional Institution for Women ("MCI-W"), alleges that on April 1, 2022, Defendant Officer Tiffany Brown brought inmate Kentiara Johnson onto Anderson's tier and allowed her to enter Anderson's cell, steal her game system, and destroy it while Brown and Defendant Sergeant Oduro-Kwarteng stood by. (Compl. at 2–3, ECF No. 1). Anderson further alleges

---

[1] The Clerk shall amend the docket to reflect the full and correct names of the Defendants.

that Johnson chased her, tried to hit her with a bread crate, destroyed her television, and pulled her hair, all while Oduro-Karteng was present but did not take action. (Id. at 3–4). Anderson states that she was put in segregation for several days following the incident even though she was the victim. (Id. at 6). She alleges that she suffered mental and emotional distress as well as the loss of her property. (Id. at 8–9).

## B.    Plaintiff's Administrative Remedy Procedure

Anderson filed a Request for Administrative Remedy ("ARP") on April 7, 2022, complaining that defendant Brown had let inmate Johnson into her cell and stood by while Johnson destroyed Anderson's property. (Records Decl. at 6, ECF No. 16-3). In this ARP, Anderson does not mention any assault or physical altercation. (Id.). The ARP was marked received on April 11, 2022, and given case number 0120-22. (Id. at 6). On May 9, 2022, the due date for responding to the ARP was extended to May 26, 2022. (Id. at 9). After receiving no response, Anderson appealed the ARP to the Commissioner of Correction. (ARP Appeal at 6, ECF No. 16-8). On June 13, 2022, the appeal was dismissed for procedural reasons, with instructions that Anderson file a legible copy of the original ARP; she did so on June 24, 2022. (Id. at 6, 8–10). On June 28, 2022, however, the Warden responded, finding Anderson's claim meritorious as to the destruction of her game system, and Anderson accepted the Warden's response the same day. (Records Decl. at 12, 16). On June 10, 2022, a request for reimbursement in the amount of $224.54 was made because the investigation revealed that "an officer's neglect to secure the unit in a timely fashion . . . ma[de] it possible for another inmate to enter into Donae Anderson's cell, grab her gaming console and destroy it." (Id. at 10). Anderson signed and accepted the request

2

for reimbursement. (Id.). There is no evidence that Anderson further pursued this ARP after accepting the Warden's response and reimbursement. Pamela White, Administrative Aide at the Inmate Grievance Office ("IGO"), declares that no grievance regarding this claim was found in a search of IGO records. (Pamela White Decl. at 1, ECF No. 16-9).

On April 30, 2022, Anderson filed a second ARP stating that she was physically assaulted by inmate Johnson. (Records Decl. at 17–19). It appears that the alleged assault was part of the incident described in the prior ARP regarding the allegation that Johnson destroyed her game system. (Id. at 6–8). This ARP was assigned case number 0151-22 and dismissed for procedural reasons because it was not timely filed. (Id. at 20). Nevertheless, the ARP coordinator advised Anderson that the assault was not foreseeable by officers and that she did not alert officers to any threat against her. (Id.). The coordinator further advised Anderson that she had thirty days to appeal the procedural dismissal. (Id.). There is no evidence that Anderson appealed this decision to the Commissioner of Correction, and Pamela White of the IGO declares that the IGO did not receive a grievance regarding this incident. (Pamela White Decl. at 1).

C.     **Procedural History**

On May 9, 2022, Anderson, proceeding pro se, filed a Complaint against Oduro-Kwarteng and Brown. (ECF No. 1). Anderson later filed a supplement to the Complaint on June 21, 2022. (ECF No. 3). On February 28, 2023, Oduro-Kwarteng and Brown filed the subject Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), which they later supplemented on March 29, 2023 (ECF No. 21). On March 22, 2023, Anderson filed an Opposition (ECF No. 20), which she later supplemented on April 13,

2023 (ECF No. 26). On April 11, 2023, Oduro-Kwarteng and Brown filed a Reply. (ECF No. 25).

## II.    DISCUSSION

### A.    <u>Conversion</u>

Defendants' Motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. <u>See</u> <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P.12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the

movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. V. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party,"

such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. Of Trs, 55 F.3d 943, 954 (4th Cir. 1995)).

In this case, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court notified Anderson of her right to respond to Defendants' Motion and advised that she may file affidavits, declarations, and exhibits along with her response. (See ECF No. 18). Anderson filed a response and a supplemental response in opposition to Defendants' Motion.[2] (ECF Nos. 20, 26). Accordingly, the Court will construe Defendants' Motion as one for summary judgment and will consider documents outside of the pleadings.

---

[2] Anderson also filed correspondence in which she requests that an attorney be appointed to represent her in this matter. (ECF No. 27). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." See Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296,

**B.**     <u>**Summary Judgment**</u>

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through

---

298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Anderson has clearly set forth her claims in her Complaint and filed a coherent response and supplemental response in opposition to Defendants' dispositive motion. She has shown no exceptional circumstances that would warrant appointment of counsel. Therefore, to the extent Anderson moves for appointment of counsel, that request is denied.

mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.  If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**D.**    **Analysis**

Defendants move to dismiss the Complaint because: 1) Anderson failed to exhaust her administrative remedies; 2) Anderson does not state a claim as to the alleged destruction of her property; 3) Defendants did not violate Anderson's rights by failing to protect her from harm, as there is no evidence that they had knowledge of a substantial risk of harm; 4) the Eleventh Amendment bars the suit against Defendants in their official

capacities; and 5) Defendants are entitled to qualified immunity in their individual capacities. (ECF No. 16-1 at 20). The Court finds that Anderson did not exhaust her administrative remedies, and thus the Court will not address Defendants' other arguments.

Defendants contend that Anderson's claims are subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because they have not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 527–28 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading standard on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and

proven by defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007). A claim that has not been exhausted may not be considered by this Court. See Jones, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. See Ross v. Blake, 136 S.Ct. 1850, 1856–57 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any Division of Correction ("DOC") official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, to have a grievance approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. See Id. § 10-206(b). Inmates housed at an institution operated by the Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the

10

administrative grievance process designed for inmate complaint resolution. <u>See generally</u> <u>Id.</u> § 10-201 <u>et seq.</u>; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining an ARP).

A prisoner in a DOC institution must file an ARP with her facility's managing official within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B). If the managing official denies the ARP, the prisoner has thirty days to file an appeal with the Commissioner of Correction. <u>Id.</u> 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the IGO. <u>Id.</u> 12.02.28.18. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. <u>Id.</u> 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. § 10-207(b)(1); <u>see also</u> COMAR 12.07.01.07(B). An order of dismissal constitutes the final decision of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). An inmate has not exhausted her administrative remedies until she has pursued her grievance through all levels. <u>See</u> <u>Woodford</u>, 548 U.S. at 90; <u>see also</u> <u>Gibbs v. Bureau of Prisons</u>, 986 F.Supp. 941, 943–44 (D.Md. 1997).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In <u>Ross v. Blake</u>, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." <u>Id.</u> at 635. In particular, it rejected a "special

circumstances" exception to the exhaustion requirement. Id. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in Ross that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. See Chase, 286 F.Supp.2d at 529–30. As a prisoner, Anderson is subject to the strict requirements of the exhaustion provisions. See Porter, 534 U.S. at 528 (making no distinction with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. See Booth, 532 U.S. at 741.

The Ross court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but

no ordinary prisoner can discern or navigate it." Id. at 643–44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Here, Anderson filed two separate ARPs regarding the incident at issue in the Complaint. (Records Decl. at 6–8, 17–19). Anderson appealed the first ARP, addressing the destruction of her property, to the Commissioner of Correction, but ultimately Anderson accepted the findings of the Warden and was reimbursed for the loss of her gaming system. She did not file a grievance with the IGO regarding this ARP. As to the second ARP in which she complains that Johnson assaulted her, Anderson did not file an appeal to the Commissioner of Correction or a grievance with the IGO.

For her part, Anderson admits that she has not exhausted administrative remedies. (Resp. in Opp'n at 3, ECF No. 20). In response to Defendants' Motion, Anderson states that she "could not exhaust [the] administrative remedy process due to former ARP coordinator Officer Anderson-Davis being biased [and] dishonest by siding [with] her coworkers [and] interfering [with] inmate Anderson's due process." (Id.). Anderson does not describe how Anderson-Davis's alleged bias and dishonesty prevented her from appealing her ARPs or filing grievances with the IGO in order to exhaust her administrative remedies. She alleges no facts to support her conclusory statements that Officer Anderson-Davis was biased and that she was prevented from exhausting her administrative remedies as a result. The evidence in the record, together with Anderson's own admission, shows that she has not exhausted her administrative remedies. As she has offered no plausible reason why she could not do so, the Complaint must be dismissed on that basis.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 16). Anderson's Complaint will be dismissed without prejudice for failure to exhaust administrative remedies. A separate Order follows.

Entered this 19th day of September, 2023.

_____/s/_____
George L. Russell, III
United States District Judge
